MIED ProSe 7 (Rev 5/16) Complaint

*Paid*
*1500015937*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE Eastern District of Michigan U.S District Court

| | |
|---|---|
| Janella Smart, Plaintiff, | Case: 4:25-cv-11833<br>Assigned To : Behm, F. Kay<br>Referral Judge: Patti, Anthony P.<br>Assign. Date : 06/18/2025<br>Description: COMP SMART V. THE PROFESSIONAL<br>GROUP (TPG) (NA) |
| | (to be filled in by the Clerk's Office) |
| v. | |
| THE PROFESSIONAL GROUP (TPG), a<br>subsidiary of BELFOR, Defendant. | Jury Trial: ☐ Yes ☐ No<br><br>(check one) |

## COMPLAINT

MIED ProSe 7 (Rev 5/16) Complaint

## I. PARTIES

1. Plaintiff: Janella Smart resides in Oakland County, MI.

2. Defendant: The Professional Group (TPG) is a subsidiary of Belfor, conducting business in the Metro Detroit Area.
3. Place of Employment Defendant Main Office: 15201 E 11 Mile Rd, Roseville, MI 48066
4. Place of Employment Defendant HR Office: 407 E Fort St, Detroit, MI 48226
5. Place of Employment Defendant Contracted Client Location: Kaiser Building 5555 New King Dr, Troy, MI 48098

Plaintiff notes that several agencies and entities involved in this complaint operate under multiple names, departments, and frequently use inconsistent mailing addresses across public documents, websites, and forms. As a result, Plaintiff made a good-faith effort to identify and notify the appropriate parties, but the inconsistent guidance made service inherently difficult to navigate, despite Plaintiff's diligence.

To the extent that service becomes contested, Plaintiff reserves the right to invokes the principles outlined in Rule 4(d) of the Federal Rules of Civil Procedure, which encourage parties to cooperate by waiving formal service when notice is reasonably provided. Any failure to waive or clarify service should not be construed as Plaintiff's negligence, but rather a lack of transparency on the part of Defendants. Plaintiff respectfully requests that the Court view any minor discrepancy in service as curable, not dismissible, especially given the pro se nature of this filing and the substantial efforts already made to initiate contact with all relevant parties.

## II. JURISDICTION AND VENUE

3. Jurisdiction is proper under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin)
4. Michigan Elliott-Larsen Civil Rights Act (ELCRA).
5. Venue is proper in this district as all relevant incidents occurred here.

MIED ProSe 7 (Rev 5/16) Complaint

## III. STATEMENT OF CLAIM

1. Plaintiff began working for The Professional Group (TPG), a subsidiary of Belfor, on or around September 19, 2024, as a janitorial worker assigned to an executive suite in Troy, Michigan.

2. Plaintiff was offered a lead role but declined the position due to personal and work-life balance concerns on October 18, 2024. Shortly afterward, Plaintiff began experiencing retaliation including excessive workloads, pressure to perform lead duties without title or compensation, persistent nitpicking by supervisors, workplace harassment.

3. On January 10, 2025, Plaintiff submitted a formal HR complaint about these issues, including unsafe practices and pressure to violate client security protocols. No proper action was taken. On January 24, 2025, Plaintiff updated her complaint to include concerns of racial discrimination. Two business days later, her employer falsely claimed she was a "no-call, no-show" and reported her as being terminated for misconduct on January 2, 2025, even though she had been classified as on a short-term layoff until January 11, 2025. Despite the Plaintiff never received a termination letter.

4. Plaintiff has since experienced long-term emotional, professional, and financial harm. She has been restricted to secure new employment and remains falsely labeled as having been terminated for misconduct, despite following all procedures and engaging in protected activity.

5. Plaintiff also faced escalating issues accessing her legally prescribed medications during this time through Walgreens and Express Scripts. Though she is not accusing her

employer of causing this, the timing and cumulative impact compounded the harm she experienced and wishes to seek clarity during discovery.

6. Plaintiff believes this pattern of retaliation and suppression may be systemic. Similar behavior occurred at her subsequent employer, Forefront Healthcare and RNA Facilities Management, which has undermining her stability after she raised concerns. Though she is not accusing her employer of causing this but wishes to seek clarity during discovery

7. Plaintiff also experienced vague, evasive communication and procedural barriers from multiple state, local, and federal agencies shortly after escalating her race complaint. The timing of these actions raised concerns about bias, administrative suppression, and whether her legal activity was being informally monitored or discouraged.

8. The discriminatory conduct of which I complain in this action includes Wrongful Termination of my employment and Retaliation.

9. It is my best recollection that the alleged discriminatory and retaliatory acts began on October 14, 2024. In addition, it also occurred but is not limited to November 11, 2024; December 23, 2024; January 8 & 10, 2025; January 24, 2025; etc.

10. I believe that the defendant is still retaliating against me.

11. I believe that race and color was a factor in the defendant's discrimination and retaliation against me.

12. The facts of my case are as follows in the factual background section.

MIED ProSe 7 (Rev 5/16) Complaint

## IV. FACTUAL BACKGROUND

1. The plaintiff began her employment with The Professional Group (TPG), a subsidiary of Belfor, on September 19, 2024. She was hired as a general cleaner and janitorial staff member at TPG's Roseville office. From the outset, Plaintiff sought a steady and stable role that would allow her to perform her duties diligently while maintaining a healthy work-life balance.

2. Shortly after starting, Plaintiff was offered a Lead Position on October 14, 2024. Despite management's encouragement, Plaintiff formally declined the offer on October 18, 2024, citing personal reasons related to work-life balance and the misalignment of the role with her goals. She communicated this decision via certified mail to ensure clarity and proper documentation.

3. Following this declination, Plaintiff began to experience being pressured to do manager-like tasks, a significant escalation of her workload and mistreatment. Management, particularly her supervisor Brian Morley and manager Clay Maxwell-Mc Cabe, subjected her to increased pressure, assigning responsibilities well beyond her original role and what was reasonable. These included tasks such as directing temporary workers, managing daily security operations unofficially, and acting as the primary point of contact for the team, without formal recognition or additional compensation.

4. This excessive workload was not only unreasonable but also disproportionate compared to what would typically be expected of a general cleaner. Plaintiff reasonably believes that this escalation was motivated, at least in part, by racial animus, as the demands placed upon her echoed historical and systemic patterns of disproportionately burdening employees of African descent with relentless and exploitative labor.

MIED ProSe 7 (Rev 5/16) Complaint

5. Throughout this period, Plaintiff consistently set clear boundaries regarding her role and responsibilities, communicating her refusal to accept the lead position or any unofficial leadership tasks. On November 12, 2024 she contacted Lisa Lee from Human Resources for resolution, after struggling to find HR contact information because it was not provided during orientation. Despite these efforts, management continued to pressure her, creating a hostile and unstable working environment. Moreover, Plaintiff was frequently subjected to nitpicking and micro-management tactics aimed at undermining her performance and morale.

6. On December 19, 2024, Plaintiff refused to grant unauthorized access to the executive suite to her manager, an incident that escalated tensions further. The plaintiff was acutely aware of the client's strict security protocols and took steps to redirect her manager to the proper security personnel. Shortly thereafter, on December 23, 2024, her supervisor left a voicemail pressuring her to report to Support Services, signaling further attempts to isolate and marginalize her within the company.

7. In late December, Plaintiff was subjected to a confusing and unexplained status change, effectively placing her on a short-term "day off" without clear communication or justification. When she appeared at the Roseville office on December 26, 2024, she was told to go home without an assignment, reflecting the company's failure to provide transparency or support.

8. These escalating acts of retaliation and mistreatment culminated in the Plaintiff filing a formal complaint with Human Resources on January 10, 2025. This complaint detailed the pattern of retaliation, excessive workload, and security violations she had experienced. The timing of this complaint was critical, as it marked the beginning of a

series of overt retaliatory actions by the Defendant, including false allegations to the
Michigan Unemployment Insurance Agency (UIA) and wrongful termination.

9. Following the revised submission of her formal complaint citing racial discrimination
   concerns on January 24, 2025, Plaintiff encountered a troubling pattern of retaliatory
   conduct from Defendant. Within hours of receiving the complaint, Defendant submitted
   false reports to the Michigan Unemployment Insurance Agency (UIA), falsely alleging
   that Plaintiff was a "no-call, no-show" and engaged in misconduct after a protected civil
   rights activity. These misrepresentations directly contradicted Plaintiff's documented
   communications with her employer and were designed to interfere with her ability to
   collect unemployment benefits.

10. Plaintiff promptly submitted overwhelming evidence to UIA on January 30, 2025,
    including certified mail, faxed documents, and digital communications, demonstrating
    her consistent follow-up and efforts to clarify her employment status. Despite these
    efforts, UIA continued to process Defendant's fraudulent claims, tamper with records,
    prolonging Plaintiff's financial hardship and deepening her emotional distress, which
    continues to impede Plaintiff's employability and financial stability.

11. To this day, Plaintiff has not received a formal termination letter from either TPG or
    Forefront. In TPG's case, this absence of documentation became particularly problematic
    when the company—after Plaintiff engaged in protected activity—retroactively claimed
    through the Michigan Unemployment Insurance Agency (UIA) that Plaintiff had been
    terminated for "misconduct" as of January 2, 2025. This claim directly contradicted prior
    communications from TPG designating her as being on "short-term layoff" with an
    expected return date of January 11, 2025.

MIED ProSe 7 (Rev 5/16) Complaint

12. Moreover, when pressed for clarification, Defendant refused to specify which workplace policy Plaintiff had allegedly violated and provided no evidence or written explanation to justify the misconduct classification. This lack of transparency—paired with the refusal to provide a termination letter—denied Plaintiff the ability to contest or understand the basis of her separation and further undermined her ability to obtain unemployment benefits, apply for future jobs, or clear her employment record.

**Paralleling Pattern of Retaliation and Discrimination According Subsequent Employers**

13. Plaintiff further notes that the patterns of retaliatory conduct she experienced at TPG—particularly workplace harassment, workload manipulation, and sudden escalation following protected activity—mirrored similar treatment she endured during her prior employment at Forefront Healthcare and RNA Facilities Management. While Plaintiff does not name either of these entities as defendants in this action she asserts that the parallel timing and tactics across these potentially involving informal information sharing or industry-level signaling.

14. Plaintiff does not currently assert that these entities, or any other actors directly caused the prescription interference, nor does she allege proven coordination between any of the actors mentioned at this time.

15. This raise serious concerns about broader patterns of workplace retaliation and suppression, The overlapping patterns across both employment contexts raise serious concerns about potential systemic retaliation, especially after engaging in protected activities, or indirect pressure mechanisms that may be uncovered through discover.

**Paralleling Pattern of Retaliation and Restricted Medication Access**

16. During the period of escalating retaliation by Defendant, Plaintiff experienced severe and escalating disruptions in accessing medically necessary prescriptions through Walgreens and Express Scripts. These disruptions included delays, denials, refusals, restrictions, and prescription manipulation that materially impacted Plaintiff's health and stability.

17. Critically, Plaintiff observed that each time she pushed back or attempted to escalate her concerns regarding these prescription issues, or engaged in a protected activity, particularly with the MDCR, she experienced a parallel increase in workplace nitpicking and retaliatory conduct. This pattern was present not only during Plaintiff's employment with Defendant (TPG), but also mirrored Plaintiff's experience at a subsequent employer, Forefront, where similar nitpicking, workplace harassment, and escalation followed her efforts to address prescription concerns. In both Plaintiff's employment with Defendant (TPG) and her subsequent employment with Forefront, a troubling pattern emerged wherein Plaintiff was repeatedly denied formal documentation of her employment status and termination.

18. Moreover, the timing of Plaintiff's separation at TPG and her termination at Forefront appeared to parallel key points of escalation related to her protected activity and her ongoing struggle to access medically necessary medication. Additionally, the similarity of this pattern at Forefront, where Plaintiff was also terminated without formal notice or explanation following protected activity related to her prescription access concerns, raises questions about whether institutional retaliation is being quietly coordinated or tolerated across multiple employers. These disruptions included delays, denials, and irregular prescription handling that materially impacted Plaintiff's health and stability. Plaintiff is

not asserting claims against Forefront in this action but reserves the right to seek discovery to understand the nature and scope of these parallel retaliatory patterns.

19. Plaintiff made good faith efforts to report and resolve these medication issues through proper regulatory channels, including the Michigan Bureau of Professional Licensing (Board of Pharmacy), the U.S. Department of Health and Human Services Office of Civil Rights, Walgreens Corporate, and Express Scripts Corporate. However, Plaintiff faced repeated procedural barriers and technical denials that prevented her from obtaining relief, despite raising clear concerns about interference and potential ADA and fraud implications.

**Paralleling Pattern of Retaliation and Potential Coordination Across Agencies**

20. Further compounding the challenges, Plaintiff faced unexplained delays and procedural irregularities in her discrimination complaints filed with the Michigan Department of Civil Rights (MDCR) and the Equal Employment Opportunity Commission (EEOC) since February 2025. Communications from these agencies became increasingly vague, rushed, and evasive, undermining the Plaintiff which contributed to the environment of discouragement and stress surrounding the Plaintiff's pursuit of her claims and substantiating her claims. This pattern of suppression contributed significantly to the hostile environment surrounding Plaintiff's efforts to seek redress and justice.

21. In addition to these administrative obstacles, Plaintiff endured systemic retaliation that extended beyond her initial employment about a month after receiving my right to sue letter on March 31, 2025. Since May 19, 2025, she has been effectively suppressed from obtaining new employment and gig opportunities and has been unable to collect future unemployment benefits due to Michigan UIA's refusal to close her previous claim after

new employment. This ongoing exclusion has caused severe economic damage and career defamation, preventing Plaintiff from maintaining financial stability or pursuing her professional goals.

22. Since initiating this Complaint, Plaintiff has observed an alarming pattern of timing and behavior from administrative agencies—most notably the MDCR and U.S. HHS OCR—that has raised serious concerns about potential informal retaliation or tracking. Shortly after Plaintiff began preparing this filing, MDCR began abruptly pushing forward mediation requests related to Plaintiff's prior complaint against RNA, despite having left that complaint idle for weeks. MDCR staff refused to explain the purpose or scope of mediation, ignored repeated inquiries, and created the impression that Plaintiff was being uncooperative—when in fact, it was the agency that had been nonresponsive, vague, and evasive.

23. The plaintiff does not allege proof that she is being surveilled, tracked, or externally flagged for retaliation. However, the suspicious timing of agency actions, including selective attention to old complaints during critical moments of protected activity, warrants scrutiny. Plaintiff asserts that discovery should be permitted into the possibility that informal communication, flagging, or tracking may have influenced the behavior of administrative bodies in a retaliatory or suppressive manner.

24. Plaintiff raised these concerns, including the ADA-related impact of the prescription interference, with the Michigan Unemployment Insurance Agency (UIA) and the Michigan Department of Labor and Economic Opportunity (LEO), and intends to fully explore these issues during discovery.

MIED ProSe 7 (Rev 5/16) Complaint

25. The plaintiff does not seek to assert claims against Forefront Michigan BPL, Michigan

UIA, Michigan LEO, U.S. HHS OCR, MDCR, Walgreens Corporate, Express Scripts

Corporate, etc in any of these actions. However, she expressly reserves the right to pursue

relevant lines of inquiry in discovery regarding systemic retaliation patterns that may

involve multiple actors, given the timing and consistent nature of the harms she

experienced.

**Conclusion**

26. While discovery is necessary to fully determine the scope and origin of this interference,

Plaintiff asserts that this pattern of harm materially contributed to her emotional distress,

health deterioration, and financial hardship. Plaintiff reserves the right to pursue this line

of inquiry fully in discovery as part of the overall pattern of retaliation and abuse

documented in this Complaint. The plaintiff expressly reserves the right to seek discovery

related to these overlapping patterns to fully understand the systemic nature of the harm

she has experienced.

27. References to prescription access issues, potential coordination, suspected mult-level

suppression, and Subsequent employer concerns are provided solely as context for the

emotional distress and pattern of systemic harm experienced by Plaintiff; no independent

claim against Defendant is asserted in this regard.

28. These overlapping harms—retaliation by Defendant, interference with unemployment

benefits, administrative suppression by civil rights agencies, and the compounding health

and career damage—constitute a pattern of systemic retaliation and abuse that Plaintiff

brings before this Court.

## IV. Exhaustion of Federal Administrative Remedies

1. It is my best recollection that I filed a charge with the Equal Employment
   Opportunity Commission or my Equal Employment Opportunity counselor
   regarding the defendant's alleged discriminatory conduct on January 10th, 2025.
   Charge Case Number: 471-2025-02135

2. The Equal Employment Opportunity Commission  issued a Notice of Right to Sue
   letter, which I received on March 31, 2025.

# VI. CLAIMS FOR RELIEF

## Count I: Retaliation (Title VII and Michigan Elliott-Larsen Civil Rights Act)

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

Defendant engaged in unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Michigan Elliott-Larsen Civil Rights Act by taking adverse employment actions against Plaintiff because she engaged in protected activity. The plaintiff's protected activities include:

- Declining the Lead Position and expressing concerns about workload and management;
- Filing informal and formal complaints with Human Resources;
- Submitting a formal Race Discrimination complaint and engaging in a protected activity;
- Documenting serious client security violations.

Defendant's retaliatory actions included excessive workload assignment, nitpicking, exclusion from work, falsifying records submitted to the Michigan Unemployment Insurance Agency, and ultimately terminating Plaintiff's employment. These actions were taken because of Plaintiff's protected activities and were intended to dissuade her and others from exercising their legal rights.

As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered lost wages, emotional distress, reputational harm, and other damages.

MIED ProSe 7 (Rev 5/16) Complaint

This claim is pled under both federal and Michigan state law where applicable, including but not limited to Title VII of the Civil Rights Act of 1964 and the Michigan Elliott-Larsen Civil Rights Act.

---

**Count II: Wrongful Termination, Including Race Discrimination (Title VII and Michigan Elliott-Larsen Civil Rights Act)**

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

Defendant wrongfully terminated Plaintiff's employment, in violation of Title VII and the Michigan Elliott-Larsen Civil Rights Act. Race discrimination was a motivating factor in Plaintiff's termination, as demonstrated by:

- The assignment of unreasonable and racially coded workloads;
- Defendant's knowledge of Plaintiff's race and subsequent escalation of mistreatment;
- The timing and nature of Defendant's false reports to the UIA following Plaintiff's formal Race Discrimination complaint.

Defendant's discriminatory actions created a hostile and intolerable work environment that culminated in Plaintiff's wrongful termination. As a direct and proximate result, Plaintiff has incurred lost income, emotional distress, and other damages.

MIED ProSe 7 (Rev 5/16) Complaint

This claim is pled under both federal and Michigan state law where applicable, including but not limited to Title VII of the Civil Rights Act of 1964 and the Michigan Elliott-Larsen Civil Rights Act.

---

**Count III: Defamation and Fraudulent Manipulation of Employment Record**

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

Defendant knowingly and willfully submitted false reports to the Michigan Unemployment Insurance Agency, falsely alleging Plaintiff was a no-call/no-show and engaged in misconduct. These false statements constitute defamation of Plaintiff's employment record and were made with reckless disregard for the truth.

Defendant's actions have harmed Plaintiff's reputation, impeded her ability to collect unemployment benefits, and have caused ongoing economic and emotional damages, including career defamation and blocking of new employment opportunities.

This claim is pled under both federal and Michigan state law where applicable, including but not limited to defamation, false light, and other common law and statutory remedies.

---

## V. DAMAGES

Plaintiff has suffered significant harm as a direct and proximate result of Defendant's unlawful actions described above, including but not limited to:

Economic Damages:

- Lost wages and benefits from wrongful termination;
- Loss of future earning capacity due to career defamation and ongoing inability to secure employment;
- Denial and delay of unemployment benefits caused by Defendant's fraudulent reports and UIA manipulation;

Emotional Distress:

- Mental anguish, anxiety, and emotional trauma resulting from sustained workplace retaliation and discrimination;
- Stress and health deterioration exacerbated by prescription access interference and administrative suppression of Plaintiff's discrimination claims;

Reputational Harm:

- Damage to professional reputation and employability caused by Defendant's false statements and defamation of Plaintiff's employment record;

Punitive Damages:

- Due to Defendant's willful, malicious, and reckless conduct in retaliation and defamation, Plaintiff seeks punitive damages to deter similar conduct in the future.

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enter judgment in favor of Plaintiff and against Defendant on all Counts;

2. Award Plaintiff back pay, front pay, compensatory damages, and punitive damages in amounts to be proven at trial;

3. Award Plaintiff costs, including reasonable attorney's fees if applicable, and any other expenses incurred in bringing this action;

4. Order Defendant to cease all retaliatory practices and take appropriate steps to remedy the hostile work environment;

5. Grant such other and further relief as the Court deems just and proper, including but not limited to any equitable relief necessary to make Plaintiff whole;

6. Encourage the parties to engage in good faith settlement discussions at any stage of the proceedings, recognizing that Plaintiff values the efficient resolution of disputes where appropriate;

7. Plaintiff reserves the right to submit documentation as appropriate during discovery or upon the Court's instruction. Due to the volume and sensitivity of supporting evidence, supporting documentation will be submitted at the appropriate stage or produced during discovery.

8. Plaintiff, appearing pro se, respectfully reserves the right to amend this Complaint as new facts, documents, parties, and claims are identified during discovery or court proceedings. The Plaintiff reserves the right seek any further relief as may be warranted by discovery or the Court's rulings. . Plaintiff further requests leave of the Court to amend as justice may require, in accordance with Rule 15 of the Federal Rules of Civil Procedure.

9. Plaintiff also reserves the right to obtain legal counsel at a later stage and to amend this Complaint accordingly to reflect attorney representation.

## VII. CERTIFICATION AND CLOSING

1. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

2. For Parties Without an Attorney: I agree to provide the Clerk's Office with any changes to my address where case- related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

MIED ProSe 7 (Rev 5/16) Complaint

Date of signing: June 18, 2025

Signature of Plaintiff :

Printed Name of Plaintiff : Janella Smart

Respectfully submitted,

Janella Smart

23065 Sussex Oak Park, MI 48237

JSmart010@gmail.com

+13135580722

Date: 6/18/2025



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Detroit Field Office**
477 Michigan Avenue, Room 865
Detroit, MI 48226
(313) 774-0020
Website: www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/31/2025

**To:** Janella Smart
23065 Sussex
OAK PARK, MI 48237
Charge No: 471-2025-02135

EEOC Representative and email:     JOANNA RIVERA
Federal Investigator
joanna.rivera@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 471-2025-02135.

On behalf of the Commission,

Digitally Signed By:Ramiro Gutierrez
03/31/2025

Ramiro Gutierrez
Director

**Cc:**
The Professional Group
15201 E 11 MILE RD
ROSEVILLE, MI 48066

Michael Bloom
The Professional Group
15201 E 11 MILE RD
Roseville, MI 48066

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 471-2025-02135 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Michelle Eisele, 115 W. Washington St. South Tower Suite 600,
Indianapolis, IN 46204.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is
a "Section 83 Request" for Charge Number 471-2025-02135 to the District Director at Michelle
Eisele, 115 W. Washington St. South Tower Suite 600, Indianapolis, IN 46204.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After
the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court
and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to
https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-
83-disclosure-information-charge-files.

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

County in which action arose: _____

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM)*

### I. (a) PLAINTIFFS

Janelle Smart

**(b)** County of Residence of First Listed Plaintiff  Oakland
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

### DEFENDANTS

The Professional Group

County of Residence of First Listed Defendant  Wayne

Case: 4:25-cv-11833
Assigned To : Behm, F. Kay
Referral Judge: Patti, Anthony P.
Assign. Date : 06/18/2025
Description: COMP SMART V. THE PROFESSIONAL GROUP (TPG) (NA)

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for P and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | I |
|---|---|---|---|---|---|
| Citizen of This State | [X] | [X] | Incorporated or Principal Place of Business In This State | [ ] 4 | [X] |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [X] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**PRISONER PETITIONS**
*Habeas Corpus:*
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
*Other:*
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organization
- [ ] 480 Consumer Credit (15 USC 1681 or 16
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

### V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of Civil Rights Act of 1964  3 MI Elliott-Larsen  ELCRA

Brief description of cause:
Wrongful Termination  Retaliation, Discrimination (Race)  Defamation

### VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes  [ ] No

### VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# PURSUANT TO LOCAL RULE 83.11

1.　　　　Is this a case that has been previously dismissed?　　　☐ Yes
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　☒ No

　If yes, give the following information:

　Court: _____

　Case No.: _____

　Judge: _____


2.　　　　Other than stated above, are there any pending or previously
　　　　　discontinued or dismissed companion cases in this or any other　　☐ Yes
　　　　　court, including state court? (Companion cases are matters in which　☒ No
　　　　　it appears substantially similar evidence will be offered or the same
　　　　　or related parties are present and the cases arise out of the same
　　　　　transaction or occurrence.)

　If yes, give the following information:

　Court: _____

　Case No.: _____

　Judge: _____


Notes : _____