UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANELLA SMART,

Plaintiff,

v.

THE PROFESSIONAL GROUP,
*a subsidiary of BELFOR*,

Defendant.
_________________________________/

Case No. 4:25-cv-11833

District Judge F. Kay Behm
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO COMPEL PLAINTIFF'S DEPOSITION, INCLUDING ITS REQUEST FOR CASE ENDING SANCTIONS (ECF No. 82), AS SUPPLEMENTED BY THE DEPOSITION TRANSCRIPT (ECF No. 105), and GRANT DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 37(b)(2) (ECF No. 97)**

**I. RECOMMENDATION**: The Court should **GRANT** Defendant's motion to compel Plaintiff's deposition (ECF No. 82), as supplemented by the deposition transcript (ECF No. 105), and **GRANT** Defendant's motion to dismiss pursuant to Fed. R .Civ. P. 37(b)(2) (ECF No. 97).

## II. REPORT:

### A. The operative pleading is Plaintiff's original complaint.

Janella Smart filed this fee-paid employment lawsuit *in pro per* on June 18, 2025 against her former employer, The Professional Group (TPG) (a subsidiary of

Belfor), based on the alleged events of September 2024 (when she began her employment) through her January 2025 formal complaint with human resources, and thereafter. (ECF No. 1, PageID.3-4 ¶¶ 1-12, PageID.5-12 ¶¶ 1-28.) The pleading makes three claims for relief: (1) retaliation (Title VII and Michigan's ELCRA); (2) wrongful termination, including race discrimination (Title VII and Michigan's ELCRA); and, (3) defamation and fraudulent manipulation of employment record. (*Id*., PageID.14-16.) As made clear in the Court's November 5, 2025 omnibus order and elsewhere, while Plaintiff in various places suggests that "she 'is only pleading gardening [sic] variety emotional distress' damages (*see* ECF No. 28, PageID.280), she *actually* pleads damages for '[m]ental anguish, *anxiety*, and *emotional trauma* resulting from sustained workplace retaliation and discrimination[,]' as well as '[s]tress and *health deterioration* exacerbated by prescription access interference and administrative suppression of Plaintiff's discrimination claims[,]' in addition to reputational harm. (ECF No. 1, PageID.17-18 (emphases added).)" (ECF No 38, PageID.428.) Importantly, Courts are not bound by a plaintiff's use of the "garden variety" label but, rather, may look beyond the litigant's own characterization of their damages. *Kubik v. Central Mich. Univ. Bd. of Trustees*, No. 15-cv-12055, 2016 WL 9631633, at *4 (E.D. Mich. Mar. 17, 2016) (citing *Equal Employment Opportunity Comm'n v. Sheffield*

*Fin., LLC*, No. 1:06CV00889, 2007 WL 1726560, at *4 (M.D.N.C. June 13, 2007)).

### B. The scope of discovery has been addressed in several court orders.

Judge Behm has referred this case to me for pretrial matters. (ECF No. 9.) I conducted a scheduling conference on August 11, 2025 and then entered an August 13, 2025 order, which provided, among other information, the following notice: "You are required to follow the Federal Rules of Civil Procedure and the Eastern District of Michigan Local Rules throughout the litigation process. The rules, and additional help for *pro se* litigants, can be accessed online via https://www.mied.uscourts.gov/index.cfm?pageFunction=proSe." (ECF No. 18, PageID.221.)

#### 1. My November 5, 2025 omnibus order (ECF No. 38) stands, because Judge Behm overruled Plaintiff's objections (ECF Nos. 39, 59) and the Sixth Circuit dismissed Plaintiff's appeal (ECF Nos. 60, 95, 96).

On November 5, 2025, I entered an omnibus order memorializing my October 23, 2025 minute entry, striking Plaintiff's notices (ECF Nos. 24, 31), and denying Plaintiff's twelve recently filed motions (ECF Nos. 25-30, 32-37). (*See* ECF No. 38.) With respect to the scope and timing of discovery, I repeated: "Defendant is entitled to the full scope of discovery on all claims and damages pleaded (*unless Plaintiff chooses to withdraw certain claims or damages by stipulation*), even while its motion for partial dismissal remains pending, although

the request for medical and mental health records will be *limited* to 10 years back from the present." (ECF No. 38, PageID.429 (emphases added).) *Inter alia*, I also stated the Court "does not give advice or advisory opinions," and "does not rule prospectively or hypothetically[.]" (*Id*., PageID.436.)

On November 6, 2025, Plaintiff filed an objection (ECF Nos. 39, 40), which Judge Behm overruled on January 9, 2026 (ECF No. 59). Plaintiff appealed these orders (*see* ECF Nos. 60, 62); however, on March 2, 2026, the Sixth Circuit entered an order dismissing Plaintiff's appeal for lack of appellate jurisdiction (*see* ECF Nos. 95, 96). *See* Case No. 26-1042 (6th Cir. Mar. 2, 2026).[1]

**2. Plaintiff's objections to my January 30, 2026 memorandum order (ECF No. 76) are pending.**

On January 30, 2026, I entered a memorandum order denying Plaintiff's motions for recusal (ECF No. 47) and to disqualify (ECF No. 64) the Magistrate Judge. (ECF No. 76.) Within this order, I stated in a footnote: "Plaintiff has taken issue in several places with the Court permitting discovery of medical and mental

---

[1] Meanwhile, Plaintiff had filed: (a) a December 8, 2025 notice of pending petition for writ of mandamus (ECF No. 44), which was assigned Docket # 25-2106 (6th Cir.); and, (b) a January 5, 2026 emergency motion (ECF No. 54) for stay for discovery proceedings pending the Sixth Circuit's review of the petition for writ of mandamus regarding the Court's November 5, 2025 omnibus order (*see* ECF No. 38). The motion for stay was denied as moot to the extent she based her request on the pendency of her objections and denied on the merits to the extent she based her motion on the pendency of a petition for a writ of mandamus. (ECF No. 84, PageID.834-836.)

health records 'limited to 10 years back from the present.' . . . As discussed at the October 23, 2025 status conference, this temporal limitation was *narrower* than requested by defense counsel (*i.e.*, "all medical and mental health records" without temporal limitation), and thus afforded a level of protection to Plaintiff against discovery going back to the beginning of her life." (ECF No. 76, PageID.746-747 n.3) (emphasis in original).

Plaintiff has filed an objection (ECF No. 87), which is pending before Judge Behm.

### 3. Plaintiff's objections to my February 11, 2026 order (ECF No. 84) are pending.

On February 11, 2026, I entered an order imposing a pre-motion requirement, striking certain filings (ECF Nos. 49, 78), and regarding multiple filings and motions (ECF Nos. 53, 79, 54, 52, 67, 73, 74). (ECF No. 84). Among other things, I denied Plaintiff's motion for a protective order (ECF No. 52) and granted Defendant's motion to compel (ECF No. 53), but only to the extent it sought to compel discovery. (*See* ECF No. 84, PageID.836-840.) Of particular note are the following provisions ordering Plaintiff to:

- fully answer Defendant's first set of interrogatories (ECF No. 53-2, PageID.575-586) without objection and under oath before a notary or by declaration compliant with 28 U.S.C. § 1746 no later than **February 20, 2026**;

- fully answer Defendant's first set of requests for production (ECF No. 53-2, PageID.587-599), without objection, no later than **February 20, 2026**; and,

- attend and give her deposition, answering counsel's questions under oath on one of three dates, which the Court **DIRECTS** Defendant to propose in writing, with the deposition to take place within the **February 23, 2026 and March 6, 2026** timeframe.

(*Id*., PageID.839 (emphases in original). The Court pointed out that the failure to provide timely responses has the effect of waiving objections. (*Id*., n. 3.) Additionally, my discussion of Fed. R. Civ. P. 60(a) included the following statement: "Plaintiff's argument that ten years of medical records is disproportional to 'an approximately one-year retaliation claim' (ECF No. 73, PageID.709 (emphasis in original)) fails to appreciate the difference between damages and liability." (ECF No. 84, PageID.844-845.) As the Court further explained:

> The reason why Defendant's record discovery is not limited to the length of the allegedly discriminatory employment practice is that it is entitled to test Plaintiff's claim that her damages were caused by Defendant's alleged actions. If a plaintiff turns out to have had a long history of the condition she claims her employer caused her to suffer, *e.g.*, anxiety, a defendant may be able to establish that the condition had another origin, or that the condition was a longstanding one, or that it was no worse after the defendant's actions than it had been before, or indeed, may have improved. Put another way, a "look-back period" enables a party accused of causing injury to establish a longitudinal baseline against which to compare the plaintiff's condition before and after the alleged causal event or behavior.

(*Id*., PageID.844.)

Plaintiff's answers and responses are dated February 20, 2026 (ECF No. 97-1), although she submits them "under protest and duress." (*Id.*, PageID.973-974, 978, 980.) Still, she "declare[s] under penalty of perjury that this foregoing is true and correct to the best of my current information and belief." (*Id.*, PageID.980.) Then, on February 25, 2026, as with nearly (if not every) order I have entered, Plaintiff filed an objection (ECF No. 93), which is pending before Judge Behm.

**4. Plaintiff's objections to my March 4, 2026 order (ECF No. 99) are pending.**

On March 4, 2026, I entered an order addressing five "letter requests" by Plaintiff seeking leave to file additional motions (ECF Nos. 86, 88-90, 92) and striking unauthorized and repetitive motion (ECF No. 91). As to Plaintiff's "motion for preliminary protective order" (ECF No. 91), I stated, *inter alia*: "the motion is repetitive of prior requests challenging the breadth and scope of discovery, including the request for ten years of medical or counseling records – which the Court has addressed again and again – and, yet again, seems to challenge this Court's prior rulings." (ECF No. 99, PageID.1004.)

Plaintiff has filed objections (ECF Nos. 103, 104), which are pending before Judge Behm.[2]

[2] Also pending are: (a) Plaintiff's January 12, 2026 motion to disqualify district judge (ECF Nos. 63, 68), as to which Defendant has filed a response (ECF No. 72) and which, for obvious reasons, is before Judge Behm; (b) Plaintiff's March 16,

### C. On February 20, 2026, Plaintiff did not "fully" answer or respond "without objection" to Defendant's interrogatories and requests for production of documents.

At the outset of Plaintiff's February 20, 2026 discovery answers and responses, she states:

> The Plaintiff submits these responses under protest and duress. Nothing contained in these Responses should be construed as a waiver of any objections, arguments, appellate positions, or previously preserved rights,. [sic] This filing is made under protest and under duress for the purpose of complying with Court Orders without moot[ing] her appellate efforts (under protest and under duress). The plaintiff to the best of her ability, good faith, and knowledge to answer all the questions fully without objections but without committing perjury due to speculation as of [February 11, 2026] under protest.

(ECF No. 97-1, PageID.973-974.) Plaintiff signs this submission "under protest and duress." (*Id*., PageID.980.) Thus, as Defendant states in its related motion, Plaintiff's answers and responses "contain objections which the Court instructed Plaintiff she could not include." (ECF No. 97, PageID.959.)

#### 1. Interrogatory Nos. 1-12

Defendant contends that Plaintiff did not provide "substantive" answers to its interrogatories. (*See* ECF No. 97, PageID.959-960.) Preliminarily, the Court acknowledges that Plaintiff's answers to Interrogatory Nos. 1 and 2 reference her

---

2026 letter seeking leave to file a motion to quash (ECF No. 101); (c) Plaintiff's March 17, 2026 letter seeking leave to file notice of errata regarding quash (ECF No. 102); and, (d) Plaintiff's April 9, 2026 letter seeking leave to file a motion for protective order and notice to stand on the record for appellate review (ECF No. 108).

"initial disclosure exhibit," (*see* ECF No. 97-1, PageID.999), and her answer to Interrogatory No. 4 states, "no expert witness as this time . . . [,]" (*id.*, PageID.975).

However, her answers to Interrogatory Nos. 1, 2, 3, 5, 6, 7, 8, 9, and 11 state that she needs or does not have enough "foundational information" or "the foundational facts are currently unknown." (ECF No. 97-1, PageID.974-978.)[3] Her answer to Interrogatory No. 10 was: "Plaintiff has performed a diligent search and multiple Social Media Accounts have been / should be deactivated to protect herself from additional potential retaliation, to her knowledge as of date. Plaintiff lacks access for additional details." (*Id.*, PageID.977.) Also, her answer to Interrogatory No. 12, which asked Plaintiff to "[s]et forth the following information with regard to each and every time you allege you were discriminated against or subjected to disparate treatment by Defendant's management or employees because of your age[,]" (*see* ECF No. 53-2, PageID.584), was: "The Defendant already has access to the Original Attached HR complaint. After a

[3] For example, Interrogatory 8 sought information about certain sources of income, and Plaintiff answered: ". . . such unemployment records . . . are equally available to the Defendant regarding this case[,]" and "Plaintiff cannot respond with additional details without engaging in speculation regarding the defendant liability, as the foundational facts are currently unknown[,]" (ECF No. 97-1, PageID.976). Defendant contends "there is no 'speculation' here as Plaintiff either did or did not receive other income and knows that information <u>now</u>." (ECF No. 97, PageID.966 (emphasis in original).)

diligent search and reasonable inquiry. Nonetheless [t]he Plaintiff has not pleaded Racial Workplace Harassment according to recent Court Records." (*Id*., PageID.978.)

Importantly, several of these interrogatories seek information related to mitigation or damages. For example, Interrogatory Nos. 5, 6, 7, and 8 – relate to employment or income "since December 2024," (*see id*., PageID.975-976). Also, Interrogatory No. 11 seeks identification of persons or entities "who have treated you for any psychological, emotional, mental or physical problem at any time for which you allege forms the basis for any damages you are seeking." (*Id*., PageID.977.)

**2. Request for Production Nos. 1-32**

Defendant also suggests Plaintiff did not provide "substantive" responses to its document requests. (*See* ECF No. 97, PageID.960-961.) Plaintiff's responses to the requests for production of documents are in collective fashion, as follows:

- As to RFPs 1-9: "See attached Exhibits[,]" which is presumably a reference to any of the 19 attached pages (*see id*., PageID.981-999);

- As to RFPs 10-11, 15-19, 21, 25: "Plaintiff has performed a diligent search and has attached the most relevant primary sources to her current knowledge. However She is unable to provide more detailed , the questions are either requires scope speculation, contain third party confidential information, or unable to authorize, or not in her control/possession, etc. Plaintiff is currently unable to provide more because the Plaintiff does not have enough foundational information.

> Plaintiff cannot respond in detail without engaging in speculation, as the foundational facts are currently unknown[.]"

- As to RFPs 12-14, 20, 22-24, 26-32: "Plaintiff has performed a diligent search and Defendant was a sender or recipient. Plaintiff has performed a diligent search and has attached the most relevant primary sources to her current knowledge. But nonetheless, majority of records are already in Defendant's possession and are equally available to the Defendant.

(*Id*., PageID.978 (emphases added).) The 19 attached pages include copies of a letter from the Michigan Department of Civil Rights (MDCR Case # 659035), materials related to the Michigan Unemployment Insurance Agency (MUIA Claim # CC0668210), and communications between Plaintiff and Defendant TPG. (*Id*., PageID.981-999.)[4]

Preliminarily, even without the underlying request, one can see that these collective responses are not forthright. Moreover, where Plaintiff responds she "is unable to provide more detailed, the questions are either requires *scope* speculation, contain third party *confidential* information, or unable to *authorize*, or not in her control/possession, etc.[,]" (*id*. (emphases added)), the Court agrees these are "veiled objections . . . ." (ECF No. 97, PageID.964.) And, from this hodge-podge of buzz phrases or boilerplate objections, one is unable to tell what is

[4] I am perplexed by the "initial disclosures" page's reference to "Plaintiff *Bella* [Last Name][.]" (ECF No. 97-1, PageID.999 (emphasis added).)

being provided, what is being withheld, and what Plaintiff simply refuses to answer. She leaves the recipient to guess.

Importantly, several of these requests seek information related to mitigation or damages. For example, Request for Production No. 10 asked for:

> All documents and electronically stored information (including, but not limited to, full and complete clinical records, office notes, diagnoses, prescriptions, communications, hospital charts, examination records, history records, x-rays, laboratory specimens, or information related to medical expenses) prepared by, submitted to, or otherwise maintained by or under the control of all treating physicians, psychiatrists, psychologists, entities or any other health professionals or practitioners *relative to any condition you allege form the basis for any damages you are seeking in this action*. For each such entity, professional or practitioner from whom such documents will be retrieved, you are requested to execute, and return to the undersigned counsel for Defendant, the attached HIPAA Privacy Authorization for Disclosure of Protected Health Information, so that Defendant may obtain relevant records.

(ECF No. 53-2, PageID.590 (emphasis added).) Even if – as Plaintiff stated in her written response – she was without "foundational information" or "foundational facts" – nothing prevented her from signing "the attached HIPAA Privacy Authorization for Disclosure of Protected Health Information," so that Defendant could "obtain relevant records." Also, Request for Production Nos. 18, 19, 20, 21 and 22 asked for information regarding income or employment since January 2, 2025. (ECF No. 53-2, PageID.592-594.) Plaintiff's collective answers do not provide this information.

### 3. Summation

Defendant is entitled to mitigation information, such as her "efforts to find new employment . . . [,]" and Defendant is also entitled to information regarding "the basis for her damages[.]" (ECF No. 97, PageID.967, 965.) Several of Defendant's interrogatories and requests for production of documents seek information on these subjects. Plaintiff's February 20, 2026 answers and responses are not "full" and "without objection." To that extent, Plaintiff has failed to comply with the Court's February 11, 2026 order (*see* ECF No. 84, PageID.839), and she was warned that a failure to do so "may result in an award of costs and expenses against her, as well as sanctions under Fed. R. Civ. P. 37, up to and including dismissal of her case with prejudice[,]" (*id.*, PageID.840). (*See also* ECF No. 107, PageID.1337-1338.) Still, she claims in her March 27, 2026 filing that this warning was somehow "vague" and inadequate. (ECF No. 106, PageID.1265-1267.)

### D. Plaintiff's March 4, 2026 deposition testimony did not remedy the deficiencies in her discovery answers and responses, at least with respect to damages.

Preliminarily, the Court notes that, on March 2, 2026 – the same day the Sixth Circuit entered its order and judgment in Case No. 26-1042 – and two days before her finally scheduled, court-ordered deposition – Plaintiff filed in the Sixth Circuit an "emergency motion for immediate administrative stay" and a

"supplemental emergency motion for immediate administrative stay" in Appeal No. 25-2106 (6th Cir.) (ECF Nos. 16, 17, therein). By these filings, Plaintiff asks the Sixth Circuit, *inter alia*, for "[i]mmediate intervention by a single judge to issue an emergency administrative discovery stay at the District Court under FRAP 27(c) . . . [,]" and to "vacate all related void ab initio court orders that were made in the month of February[,]" including the then-forthcoming March 4, 2026 deposition and March 11, 2026 motion hearing. Appeal No. 25-2106 (6th Cir.) (ECF No. 16, therein).

In any event, Plaintiff contends that "[a]ny perceived opinion of ambiguity in Plaintiff's written responses was remedied during her hours-long deposition, etc." (ECF No. 106, PageID.1256.) It turns out that Plaintiff *was* deposed for the instant lawsuit on March 4, 2026. As I requested, Defendant has filed a copy of the transcript of Plaintiff's deposition (ECF No. 105, PageID.1041-1077), which began at 10:06 a.m. and concluded at 1:42 p.m. (*id*., PageID.1042, 1077). (*See also* ECF No. 105-1 [Dep. Ex. Nos. 1-6], 105-2 [Dep. Ex. Nos. 7-15].) Although Plaintiff did provide about 3.5 hours of testimony, the transcript reveals evidence of gamesmanship or avoidance or evasiveness.

**a. Testimony related to alleged damages for "emotional distress"**

During the deposition, Plaintiff made multiple objections related to, *e.g.*, her medication (ECF No. 105, PageID.1043 [pp. 6-7]) and anxiety or emotional distress (*id*., PageID.1068 [pp. 107-108]).[5]

For example, defense counsel asked Plaintiff if she was "taking any medications that could interfere with [her] ability to understand [counsel's] questions or answer truthfully," and Plaintiff responded, "I'm going to object to that question for privacy reasons, patient privacy or physician privacy." (ECF No. 105, PageID.1043 [pp. 6-7].) Yet Plaintiff continued to resist even when counsel clarified her question:

> Q. And I'm just going to clarify for the record, okay. I do not want you to give me a list of all the medications that you're on. I'm only asking if there is any medication that could interfere with your ability to understand questions or truthfully answer questions.
>
> A. Okay.
>
> Q. With that information, do you want to change your answer at all?
>
> A. No, because it's a medical related question. I'm erring on the side of caution.

[5] Additionally, Plaintiff initially objected to counsel's question about whether she had filed any other employment-related lawsuits, although she ultimately admitted to one other lawsuit (*see id*., PageID.1075 [p. 135]), which is perhaps *Smart v. Enviro-Clean Services, Inc.*, Case No. 2:25-cv-13885-LJM-CI (E.D. Mich.) (dismissed on February 13, 2026 for having "failed to state a plausible claim of disability discrimination under the ADA.").

(*Id*., PageID.1043 [p. 7].)

Also, Plaintiff was not forthcoming when questioned about emotional harm, *i.e.*, an allegation she makes in her pleading. (ECF No. 1, PageID.3 ¶ 4.) For example, defense counsel asked, "What is the long-term emotional harm you're referring to?" (ECF No. 105, PageID.1067-1068 [pp. 105-106].) Plaintiff responded: "*I still need more information on my side to give an official stance on that on the record*. But I was speaking in general from the frustration of HR and my managers being evasive and avoiding paperwork. So just the pure stress of the inconsistency, at some point I have to go off of what official paperwork says." (*Id*., PageID.1068 [p. 106] (emphasis added).) Notably, the discovery cutoff was March 1, 2026 (ECF No. 18), and it was extended to March 6, 2026 for the sole purpose of completing her deposition. (ECF No. 84, PageID.837, 839.) The time for figuring out what her damages are and for giving an "official stance" has passed. There are similar exchanges, such as:

Q. So do you allege you've suffered emotional harm?

A. I allege that I suffered, which I've been trying to update, is garden variety just -- I think that's just stress and –

Q. What do you believe garden variety emotional stress is?

A. Just general stress, anxiety.

. . .

Q. What about your anxiety? [as alleged in ECF No. 1, PageID.17]

A. I'm just going to speak in general.

Q. Did the anxiety get better?

A. I'm going to speak in general. *I'm not going to give an official hard detailed stance about my emotional distress. I'm going to object to that and get a protective order.*

Q. Do you want to withdraw your claim of emotional distress? [including "emotional trauma," as alleged, *Id.*]

A. *I'm not withdrawing any claims at this time.*

Q. So, if you withdraw your claim of emotional distress, then I would not be entitled to know anything about your emotional distress, about your medical records, any type of psychological records, health records, counseling records. I would not be entitled to that if you withdrew that claim. If you don't withdraw that claim, even if you are alleging general stress and anxiety, or garden variety, I am still entitled to know information about your stress and anxiety that you allege the company caused. So I'm just placing that on the record today. I understand you're still objecting to providing me more information about your emotional distress. Is my understanding right?

A. That is correct. Because it cannot be one-sided. There should still be protections, proportionality, and everything else in consideration. It can't just be broad. So I still have a right to object to a certain degree.

(*Id.*, PageID.1068 [p. 106-108] (emphases added).) In fact, defense counsel asked, "I understand that you're seeking a protective order regarding anything related to your mental or physical health, is that correct?" Plaintiff responded, "That is correct." (*Id.*, PageID.1069 [p. 110].) Indeed, she cagily avoided questions about

whether she had received treatment relating to her employment by Defendant and, after months of being asked for treatment records, could not say whether any existed and apparently had done nothing to find out:

> Q. Yep. Have you received treatment from a therapist, a psychologist, a doctor specifically relating to your employment at The Professional Group?
>
> A. I know it should be an obvious question, but that's a very tricky question, just because of how it's phrased.
>
> Q. I can tell you what I'm trying to understand.
>
> A. Okay.
>
> Q. If we have to go in front of a judge, Ms. Smart, if you disclose that you sought treatment from a therapist, and as part of your treatment with your therapist you talked about your discrimination claims from TPG, or your retaliation claims from TPG, I would tell the judge I need those records, okay. And so what I'm trying to determine is do those records exist or not?
>
> A. I'm going to say I don't recall, just simply because I would have to look. That's not a great answer. But I don't want to give a hard yes or hard no. I just need to double check.

(*Id*. [p. 112].) Her later testimony that she does not intend to rely on expert witnesses in support of her emotional distress damages (*see id*., PageID.1073-1074 [pp. 129-130]) does not obviate Plaintiff's need to provide information regarding an alleged damage that *her pleading* places at issue.

But a focus on the use of an expert witness misses the point. If Plaintiff is pursuing the damages she has pleaded – which include anxiety, mental anguish,

emotional trauma, and health deterioration (*see* ECF No. 1, PageID.17) – and intends to ask a jury for such damages, Defendant is entitled to explore the veracity of these alleged damages, their extent, their duration and their true causes. Indeed, the *alleged* health deterioration places her physical health in issue, even though she testified that she is not alleging that she has physical problems resulting from her employment with Defendant (*see* ECF No. 105, PageID.1069 [p. 111]). Defendants do not have to take Plaintiff's word for when these conditions first surfaced. Nor do they have to take her word for cause and effect. Way back at the October 23, 2025 status conference, Plaintiff was offered the opportunity to withdraw by stipulation her allegations of emotional distress and anxiety (a disorder class in the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5)) (*see* Oct. 23, 2025 minute entry and ECF No. 38, PageID.429); instead, approximately one month later, she sought leave to file an amended complaint that proposed damages including emotional distress, anxiety, and, apparently, exacerbation of these damages "by prescription access interference and administrative suppression of Plaintiff's discrimination claims[.]" (ECF No. 41, PageID.474.)

**b. Testimony related to mitigation of alleged "economic damages"**

Additionally, the deposition transcript reflects some testimony regarding mitigation of damages following the conclusion of her employment with

Defendant. Plaintiff testified that she started her job search in "late 2024." (ECF No. 105, PageID.1047 [pp. 23-24].) However, she could not provide the exact dates of her subsequent employment with RNA, could only estimate how much she made per hour, could not remember in detail the reason for her termination from RNA, and objected to providing detail about how she believes RNA violated the law in connection with her termination. (ECF No. 105, PageID.1047-1048 [pp. 25-28].) As for her subsequent employment with Forefront, she testified, *inter alia*, that she believed she was terminated, although she could not remember the reason for her termination, and, when asked why she believed that her termination from Forefront violated the law, she "object[ed] to going into detail." (*Id*., PageID.1049 [pp. 29, 30].)

Defense counsel asked Plaintiff whether she "had any sources of income, since December 2024, other than from the three employers" that she had already identified (*i.e.*, Defendant TPG, RNA, and Forefront), as well as the Unemployment Insurance Agency (UIA)). (ECF No. 105, PageID.1075 [p. 134-135]; *see also id*., PageID.1072-1073 [pp. 124-125, 137-139], PageID.1048 [pp. 25-30].) When counsel asked, "[h]ave you received income from any other sources[,]" Plaintiff answered, presumably with reference to unemployment benefits: "I think my primary source of income, especially since I worked at Kamas before I worked at TPG, that's been the primary." (*Id*., PageID.1075 [p.

135].) She also refused to answer a question about whether she had any plans to file for bankruptcy protection, citing an amorphous "privacy privilege." (*Id.*, PageID.1045 [p.16].)

**c. Testimony related to "core theory"**

Finally, the Court notes Plaintiff's testimony that she is "still trying to confirm [her] core theory." (ECF No. 105, PageID.1074 [p. 132].) During the deposition, defense counsel asked Plaintiff about Interrogatory No. 2, which asked Plaintiff to "[i]dentify all persons with whom you have communicated (either orally or in writing, including email) concerning any of the claims, allegations and damage requests that you are making against Defendant in this action (excluding your attorney)[,]" (*see* ECF No. 53-2, PageID.576-577; ECF No. 106-1, PageID.1311-1312), and Plaintiff's answers in the ensuing exchange were evasive:

Q. . . . Who did you communicate with about your allegations?

A. It's just so broad. I can't remember every single person. I guess the possibility is that I communicated with someone. I just can't identify.

Q. Is there any way that you could attempt to identify people you spoke with about the allegations you made in your complaint?

A. No, not at this time.

Q. What about at a different time?

A. Once I have more information.

Q. And what information specifically would you need?

A. *I'm still trying to confirm my core theory*. Especially for stuff like defamation, for example, I'm still trying to confirm is it true. If I was formally blackmailed and stuff like that. So there is just additional information I need before I can give you a cleaner response.

Q. To the best that you can, can you identify for me what additional information you need in order to provide more information in your interrogatory responses?

A. Not right now, no.

Q. Do you know what additional information you need?

A. It highly depends. It's just a very broad question. So I guess for these, I'm objecting to the broadness. It's just so broad that the possibility exists that I can't –

(*Id*., PageID.1074 [pp. 132-133] (emphasis added).)

Ultimately, defense counsel "reserve[d] the right to keep [Plaintiff's] deposition open[,]" and further explained: "I'm going to leave your deposition open, to the extent the Judge makes a ruling that allows me to ask some questions that you objected to today. Other than that, I have no questions for you further." (*Id*., PageID.1077 [p. 142].)

### E. On March 11, 2026, I conducted a hearing on several motions, including Defendant's February 10, 2026 motion to compel Plaintiff's deposition (ECF No. 82).

As to several motions (ECF Nos. 6, 41, 48, 82), I noticed an in person hearing for March 11, 2026 (ECF No. 85), at which Smart appeared on her own behalf and Attorney Jaclyn R. Giffen appeared on behalf of the defendant. During that hearing, Defendant agreed to withdraw its then-pending July 16, 2025 motion for partial dismissal and to strike certain allegations (ECF No. 6) without prejudice, and I entered a bench order to that effect. Following the hearing, I took the other three motions under advisement and have separately entered an order denying Plaintiff's motion to add defendant or for alternative relief (ECF No. 41) and granting Plaintiff's motion for jury trial (ECF No. 48). (ECF No. 109.)

Of the motions heard on March 11, 2026, that leaves Defendant's February 10, 2026 motion to compel Plaintiff's deposition (ECF No. 82), which asks the Court to "dismiss Plaintiff's complaint with prejudice and award Defendant its attorney fees[,]" or "enter any and all alternative sanctions this Court deems appropriate and award Defendant its attorney fees[,]" (*id*., PageID.789-790, 812). Plaintiff filed a timely response on February 27, 2026 (ECF Nos. 83, 94).[6]

---

[6] To the extent Plaintiff's February 27, 2026 response asked the Court to deny Defendant's February 10, 2026 motion to compel her deposition on the basis that Defendant did not comply with E.D. Mich. LR 37.1's conference requirement (*see* ECF No. 94, PageID.934, 941-943), Defendant's February 10, 2026 motion to compel states, "when Defendant sought to confer with Plaintiff to resolve this

In its March 4, 2026 statement, Defendant represented that its motion to compel Plaintiff's deposition (ECF No. 82) was considered "resolved as Plaintiff has agreed to appear for her deposition on March 4, 2026 at 10:00 a.m. at Defendant's counsel's office." (ECF No. 100, PageID.1012.) However, during the March 11, 2026 hearing, defense counsel stated, *inter alia*, that Plaintiff had objected to certain questions, and Defendant still needed information regarding medical records (at least for trial, if not for a motion for summary judgment) and mitigation of damages. Moreover, Plaintiff's refusal or inability to explain why she no longer has either of her two subsequent jobs, which would likely also have been made clear through the employment records of which she is actively resisting production (ECF No. 102), makes it impossible for Defendant to know whether these employment separations provide a basis for eliminating any claim for future economic damages.

Upon consideration, Defendant's February 10, 2026 motion to compel Plaintiff's deposition (ECF No. 82) is **GRANTED**, as supplemented by the deposition transcript filed on March 20, 2026 (ECF No. 105), which I have read in its entirety.

---

matter (which also cost time, money, and effort) she simply reiterated she did not intend to proceed with discovery until her motions were ruled on and referenced her prior Notice[,]" (ECF No. 82, PageID.807), and Defendant attached a copy of Plaintiff's January 29, 2026 notice of non-appearance for deposition scheduled for [February 5, 2026][,]" (ECF No. 82-4).

I begin with some preliminary observations. Plaintiff claims in her March 27, 2026 filing that she is reviewing the transcript for accuracy (*see* ECF No. 106, PageID.1256, 1262), and she also contends that "Defendant chose to publish [her] entire, private deposition transcript on the public docket[,]" suggesting, *inter alia*, that "Plaintiff's refusal to provide further medical data without a Protective Order was a necessary precaution against the Defendant's demonstrated intent to publicize Plaintiff's private life." (*Id*., PageID.1269.) However, on March 11, 2026, the Court directed Defendant to file the deposition transcript. Therefore, I do not fault Defendant for its March 20, 2026 filing of the deposition transcript.

Also, I am *not* impressed that Plaintiff "agreed to participate in [the March 4, 2026] deposition," (ECF No. 106, PageID.1256; *see also id*., PageID.1259), because depositions by oral examination are expressly permitted by Fed. R. Civ. P. 30. The same can be said of Plaintiff's statement that, "[d]espite the deposition being under duress," her participation proves she "attempts to meet the defendant halfway despite their uncompromising demands." (ECF No. 106, PageID.1256.) In fact, she had to be ordered to appear. (ECF No. 84, PageID.839.) On December 30, 2025, Defendant noticed Plaintiff's deposition to take place on February 5, 2026 (ECF No. 53-4), and the record of this case contains a January 29, 2026 "notice of non-appearance for deposition scheduled for [February 5, 2026][,]" (ECF No. 82-4), and a February 6, 2026 email from defense counsel to Ms. Smart,

inquiring, in part: "Please advise if you agree to appear for your deposition within the next two weeks (and provide dates and times you are available)." (ECF No. 82-5.) Defendant contends Plaintiff "did not respond[,]" (ECF No. 82, PageID.801); thus, Defendant filed its February 10, 2026 motion to compel Plaintiff's deposition (ECF No. 82). On February 11, 2026, Plaintiff was ordered to, *inter alia*, attend and give her deposition. (ECF No. 84, PageID.839.) A party filing a lawsuit should expect to be deposed by its opponent, Plaintiff initially resisted being deposed, and her ultimate acquiescence to being deposed does not prove she has met Defendant "halfway." *See* Fed. R. Civ. P. 37(d).

Turning to the substance of Plaintiff's deposition, I acknowledge there are many areas in which Plaintiff was not obstructive. In her words, "[a] holistic review of the very transcript Defendant filed reveals that Plaintiff provided hours of cooperative testimony throughout the entire deposition." (ECF No. 106, PageID.1262.) Still, whatever cooperation Plaintiff gave during her March 4, 2026 deposition, her complaint alleges damages, including "emotional distress," which she describes as "mental anguish, anxiety, and emotional trauma resulting from sustained workplace retaliation and discrimination[,]" and "stress and *health deterioration* exacerbated by prescription access interference and administrative suppression of Plaintiff's discrimination claims[,]" (ECF No. 1, PageID.17 (emphasis added)); yet, at her March 4, 2026 deposition, she continued to resist

providing information about her physical and mental health (*see*, *e.g.*, ECF No. 105, PageID.1069 [p. 110]).

Finally, during the March 11, 2026 hearing, the Court questioned Plaintiff on this subject and took from Plaintiff's answers – or refusal to answer – that she will not produce any health or mental health records prior to her employment, if at all. She reiterated that she still disagrees with the 10-year look-back window ordered by the Court and objects to it. When asked if she provided the previously ordered treatment record releases, she told the Court that "that was the main thing that was avoided. I didn't provide that." She also admitted that she withheld documents based on privilege without providing a privilege log (as required by Fed. R. Civ. P. 26(b)(5)(A)(ii)), admitted she withheld all medical-related documents, and said "Correct" when asked if she understood that she was under court order to provide them.[7]

### F. Meanwhile, on March 2, 2026, Defendant filed a motion (ECF No. 97) seeking dismissal with prejudice as a discovery sanction, as well as an award of attorney fees.

[7] The Court asked Plaintiff whether she would produce records from before her employment with Defendant, but in response she "stood by her objections" so as to "not moot" her Sixth Circuit petition (for mandamus). So, the Court said that it would take her answer to be "No," *i.e.*, that she will not produce the medical or mental health records. Plaintiff was afforded an opportunity to refute the Court's understanding, but instead stood silent.

Defendant's March 2, 2026 motion to dismiss pursuant to Fed. R. Civ. P. 37(b)(2) (ECF No. 97) contends Plaintiff has violated the Court's February 11, 2026 order (ECF No. 84) to the extent it provided that Plaintiff must "respond to all written discovery, without objection, by February 20, 2026," and "follow specific pre-motion procedures related to electronic filings." (ECF No. 97, PageID.955.)

During the March 11, 2026 hearing, Defendant represented it has not received the authorizations, and Plaintiff admitted she did not provide them. Plaintiff's refusal to provide signed authorizations for medical or mental health information, even though such information is clearly at issue due to the array of her alleged emotional distress and "health deterioration" damages (*see* ECF No. 1, PageID.12, 17), is contumacious conduct. Defendant also represented that it did not receive a privilege log, and Plaintiff admitted she withheld information based on privilege. On this subject, the Federal Rules of Civil Procedure provide:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). Having been warned as early as August 13, 2025 that she had to abide by the Federal Rules of Civil Procedure (*see* ECF No. 18,

PageID.221), Plaintiff's March 11, 2026 assertion that she did not know she needed to provide a privilege log is no excuse. In the end, the record is clear that Plaintiff wishes either to play by her own rules or to ignore the rules and rulings with which she does not agree.

Plaintiff timely filed her response on March 27, 2026 (ECF No. 98; ECF No. 106, PageID.1255-1270).[8] Defendant filed a reply on April8, 2026. (ECF No. 107.) This motion is now ready for decision.

**G. Dismissal of this action is the appropriate Fed. R. Civ. P. 37 sanction for Plaintiff's failure to cooperate in discovery.**

Each of the motions addressed in this report cites Fed. R. Civ. P. 37 and seeks dismissal of Plaintiff's complaint with prejudice. (ECF No. 82, PageID.789; ECF No. 97, PageID.948.) Under Fed. R. Civ. P. 37(b)(2)(A), "'a district court may sanction parties who fail to comply with its orders in a variety of ways, including dismissal of the lawsuit.'" *Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (quoting *Bass v. Jostens, Inc.,* 71 F.3d 237, 241 (6th Cir.1995)). "The use of dismissal as a sanction for failing to comply with

[8] Attached to Plaintiff's fifteen page response (ECF No. 106, PageID.1255-1269) are: (a) Plaintiff's August 8, 2025 response in opposition to Defendant's motion to dismiss (*id*., PageID.1270-1286 [Exhibit A]; *see also* ECF No. 16); (b) Plaintiff's August 8, 2025 response in opposition to Defendant's motion to strike (*id*., PageID.1287-1308 [Exhibit B]; *see also* ECF No. 15); and, (c) Defendants' October 15, 2025 discovery requests (*see* ECF No. 106-1, PageID.1309-1335).

discovery has been upheld because it accomplishes the dual purpose of punishing the offending party and deterring similar litigants from such misconduct in the future." *Bass*, 71 F.3d at 241 (*citing Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642-643 (1976)). The Sixth Circuit "has identified four factors which should be considered when reviewing a decision by a district court to dismiss a case under Rule 37." *Bass*, 71 F.3d at 241. (*See also* ECF No. 82, PageID.803-804; ECF No. 97, PageID.962-964.)[9]

**1. Whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault?**

"Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct." *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). As the Sixth Circuit has explained:

> The first factor—whether the party's failure is due to willfulness, bad faith, or fault—requires "a clear record of delay or contumacious conduct." *Freeland v. Amigo,* 103 F.3d 1271, 1277 (6th Cir.1997). Contumacious conduct refers to behavior that is "'perverse in resisting authority' and 'stubbornly disobedient.'" *Schafer v. City of Defiance Police Dep't,* 529 F.3d 731, 737 (6th Cir.2008) (quoting *Webster's Third New International Dictionary* 497 (1986)). The plaintiff's "conduct 'must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings.'" [*Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (quoting *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir.2001))].

[9] "[T]he factors considered when reviewing a dismissal under Rule 41(b), Rule 37(b), or a court's inherent power are largely the same." *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994).

*Carpenter v. City of Flint*, 723 F.3d 700, 704–05 (6th Cir. 2013).

**a. Plaintiff's first factor argument is unavailing.**

Plaintiff argues that her conduct is "preservative, not willful." (ECF No. 106, PageID.1259-1262.) For example, Plaintiff seems to characterize her December 9, 2025 petition for a writ of mandamus (*see* Case No. # 25-2106 (6th Cir.) and her request for clarification due to a disability as "a good-faith dispute over privacy and procedure." (ECF No. 106, PageID.1259.) However, as explained above, my November 5, 2025 omnibus order (ECF No. 38) has survived Plaintiff's November 6, 2025 objection to Judge Behm (*see* ECF Nos. 39, 59) and Plaintiff's January 13, 2026 appeal to the Sixth Circuit (*see* Case No. 26-1042 (6th Cir.)).

Also, Plaintiff contends her "use of the term 'speculation' in her written discovery was a good-faith effort to adhere to her duty of candor under the penalty of perjury[,]" (ECF No. 106, PageID.1259-1260), and the Court can appreciate a party's desire to avoid committing perjury. (*See also id*., PageID.1266.) However, Plaintiff cannot continue to "say nothing."

Additionally, Plaintiff contends "there is a legitimate legal disagreement, especially regarding the scope of sensitive medical data[,]" stating, *inter alia*, that, "[i]f you turn over everything without a Protective Order and it's posted on the public docket, an appeal later won't fix the fact that your private info is now public

. . . .” (ECF No. 106, PageID.1261.)[10] However, Plaintiff sought a preliminary protective order due to privacy concerns in October 2025 (ECF Nos. 26, 34), which the Court addressed in November 2025 (*see* ECF No. 38), and Plaintiff again sought such relief in February 2026 (ECF No. 91), which the Court addressed on March 4, 2026 (*see* ECF No. 99). But these prior motions focused on *denying access* to her records, took exception to and reargued the issue of the Court permitting a 10-year look-back, and argued about relevancy and proportionality, with some boilerplate verbiage thrown in about sole “use in this litigation[,]” “secure handling and disposal,” and non-disclosure to third parties. (*See, e.g.*, ECF No. 26, PageID.256.)[11] When Defendant proposed a standard stipulated protective order limiting the use of her information to this litigation back in November 2025, Plaintiff balked. (*See* ECF Nos. 56-2; ECF No. 56-3, PageID.642-643.) For example, Plaintiff refused to agree to the standard term contained in all such protective orders of returning or destroying confidential

---

[10] Plaintiff makes arguments regarding preservation of privacy rights and preservation of the Sixth Circuit’s jurisdiction elsewhere in her response. (*See* ECF No. 106, PageID.1268-1269.)

[11] As the Court pointed out in its November 5, 2025 order, there were other problems with certain of Plaintiff’s October 2025 motions (*see* ECF Nos. 25, 26, 28, 29, 30), such as her unreasonable invitation for the Court to “review the record for the inadvertent inclusion of personally identifiable information . . . [,]” or to provide “clarification as to whether the Court will issue redactions or if the Plaintiff is required to submit redacted versions directly,” (ECF No. 25, PageID.247). (*See* ECF No. 38, PageID.435-436.)

materials at the end of the litigation (*see* ECF No. 56-2, PageID.638 ¶ 15), because, in her words, "I have related legal matters and I'm unable to agree to that at this time[,]" (ECF No. 56-3, PageID.642). In other words, she wanted to use confidential discovery in this case for other cases. She also, *inter alia*, wanted the proposed protective order to somehow "address my proportionality of discovery, that is already before the Court." (*Id.*) The Court is not fooled into thinking that Plaintiff's concern is about making her treatment records *public*; rather, as she has made clear time and time again, she has no intention of producing any treatment records or discussing under oath her treatment prior to her very short employment with Defendant, and apparently not *at all*, no matter how many times the Court orders it.

In sum, while Plaintiff contends she "has complied with the vast majority of the Court's orders, including under duress, and the only point of contention / disagreement is sensitive data[,]" she has not, as she would have the reader believe, "substantially complied." (ECF No. 106, PageID.1261-1262.)

**b. Plaintiff's behavior is stubbornly disobedient.**

Plaintiff contends that "[a]ny delay regarding medical records is a narrow, good-faith effort to protect the jurisdiction of the Court of Appeals." (ECF No. 106, PageID.1259.) Plaintiff also contends that "any delay is better explained by pro se confusion and disability that was disclosed . . . in October 2025[,]" (*id.*,

PageID.1260), which is presumably a reference to one or more her six October 2025 ADA-related filings in which she vaguely claims a need for accommodation (*see* ECF Nos. 24, 27, 29, 30, 32, 35).[12]

However, the cause of the delay in this case is Plaintiff's stubborn disobedience. Plaintiff filed this lawsuit in June 2025, and the Court issued a scheduling order in August 2025. (ECF Nos. 1, 18.) The Court's November 5, 2025 order stated that Defendant's "request for medical and mental health records will be limited to 10 years back from the present." (ECF No. 38, PageID.429.)[13]

Since then, Plaintiff has steadfastly resisted disclosure of such records. As for written discovery, Defendant served its first set of interrogatories (Nos. 1-12) and first set of requests for production (Nos. 1-32) on October 15, 2025. (ECF No. 53-2, PageID.575-599; ECF No. 106-1, PageID.1310-1334.) Thus, Plaintiff's answers and responses were originally due on or about November 14, 2025. Fed. R. Civ. P. 33(b)(2), Fed. R. Civ. P. 34(b)(2)(A). By that point she had the benefit

[12] Notably, in her recently dismissed case in this Court against Enviro-Clean Services, Inc. (to whom she allegedly applied and with whom she allegedly interviewed for employment in November 2024), Plaintiff's claim was rejected because she asserted a disability, yet did not reveal what the disability was in her pleadings. Case No. 2:25-cv-13885-LJM-CI (*see* ECF No. 1, PageID.6; ECF No. 7, PageID.25, therein).)

[13] Plaintiff objected to this order on November 6, 2026 (ECF No. 39), Judge Behm overruled this objection on January 9, 2026 (ECF No. 59), and Plaintiff filed a related appeal on January 13, 2026 (*see* Case No. 26-1042 (6th Cir.)), which the Sixth Circuit dismissed on March 2, 2026 for lack of appellate jurisdiction.

of the Court's November 5, 2025 order explaining the 10-year limitation on Defendant's request for medical and mental health records. Defense counsel emailed Plaintiff on November 20, 2025, and she responded on November 24, 2025 that she had "concerns regarding the disproportionate scope of [defendant's] discovery requests, including the need for a protective-order." (ECF No. 53-3.) On December 31, 2025, Defendant filed a motion to compel. (ECF No. 53.)[14] The Court expressly addressed this motion in its February 11, 2026 order (*see* ECF No. 84, PageID.836-840), providing clear direction that Plaintiff was to fully answer and respond to the requests without objection by February 20, 2026 (*id.*, PageID.839), and the order also stated: "Plaintiff's argument that ten years of medical records is disproportional to 'an approximately one-year retaliation claim' (ECF No. 73, PageID.709 (emphasis in original)) fails to appreciate the difference between damages and liability." (ECF No. 84, PageID.844.) Nonetheless, Plaintiff's February 20 answers and responses – provided 120 days after discovery was served and 98 days after they were originally due – were non-compliant with the Court's February 11, 2026 order's clear direction. As detailed above (*see*

[14] On January 5, 2026, Plaintiff filed an emergency motion for a stay of discovery (*see* ECF No. 54) pending the Sixth Circuit's review of her December 9, 2025 petition for a writ of mandamus (*see* Case No. # 25-2106 (6th Cir.)). This was denied on February 11, 2026 for several reasons. (ECF No. 84, PageID.834-836.)

Section II.C), the underlying discovery requests concerned, *inter alia*, treatment records and mitigation information.

Similarly, on December 30, 2025, Defendant noticed Plaintiff's deposition for February 5, 2026 (ECF No. 53-4), the record of this case contains a January 29, 2026 "notice of non-appearance for deposition scheduled for [February 5, 2026][,]" (ECF No. 82-4), and a February 6, 2026 email from defense counsel to Ms. Smart inquires, in part: "Please advise if you agree to appear for your deposition within the next two weeks (and provide dates and times you are available)." (ECF No. 82-5.) Defendant contends Plaintiff "did not respond[,]" (ECF No. 82, PageID.801); thus, Defendant filed the currently pending February 10, 2026 motion to compel her deposition (ECF No. 82). Although Plaintiff appeared for her deposition on March 4, 2026 (ECF No. 105) – *i.e.*, 27 days after the originally noticed deposition – her challenge to discovery of information regarding her physical and mental health continued (*see* Section II.D).

The foregoing procedural detail and my extensive experience with this case reveal that Plaintiff's conduct is – at least with respect to her medical and mental health information – stubborn disobedience rather than a "deficiency" based on " a misunderstanding of the rules[.]" (ECF No. 106, PageID.1260.) In sum, Plaintiff refused "to engage in discovery or provide responses to discovery while discovery [was] open and ongoing." (ECF No. 82, PageID.806.) Put another way, Plaintiff

"is refusing to obey the clear requirements set forth in the Court's February 11 Order." (ECF No. 97, PageID.966.) It is misleading for Plaintiff to characterize the Court's instructions or directives as "vague." (ECF No. 106, PageID.1260-1261.) The Court's February 11, 2026 order provides clear direction to Plaintiff with respect to answering and responding to written discovery and attending and giving her deposition. (ECF No. 84, PageID.839.) Thus, to use Defendant's word, the Court's order was "specific." (ECF No. 107, PageID.1338; ECF No. 97, PageID.964.) Nonetheless, Plaintiff's February 20, 2026 answers and responses are not full and without objection, Plaintiff's challenge to discovery of information regarding her physical and mental health continued at her March 4, 2026 deposition, and, during the March 11, 2026 hearing, defense counsel stated, among other things, that Defendant still needed information regarding medical records (at least for trial, if not for a motion for summary judgment) and mitigation of damages. Plaintiff made it clear that she would not provide medical or mental healthcare releases, despite also acknowledging that she was under court order to do so. Plaintiff has been recalcitrant on this point at every turn.

**2. Whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery?**

Plaintiff argues that "Defendant suffers zero prejudice" and she "is more prejudice[d]." (ECF No. 106, PageID.1262-1265.) Preliminarily, where Plaintiff relies upon *Mulbah* as having "reversed a dismissal because the district judge

ignored the 'Balance of Hardships' arguing that the 'Hardship' was greater than the 'Hardship' to them[,]" (*id.*, PageID.1263), it is notable that neither "balance" nor "hardship" appear in this Sixth Circuit decision, suggesting a hallucinated citation, courtesy of generative AI. Plaintiff was cautioned and warned, at length and in writing, about the perils of relying on AI. (ECF No. 38, PageID.437-438.) Also, Plaintiff's various suggestions that Defendant got her medical information by "illegal interference" or obtained it "illegally through third parties" (*see id.*, PageID.1263-1265) are outlandish, unless she is likening "illegal" to any of her challenges to the Court's rulings.

Here, Plaintiff's failure to cooperate in discovery has clearly prejudiced Defendant. "[A] defendant is prejudiced by discovery violations when it is 'unable to secure the information requested,' *Harmon*, 110 F.3d at 368, and 'waste[d] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide,' *Schafer*, 529 F.3d at 739 (alteration in original) (quoting *Harmon*, 110 F.3d at 368)." *Norris v. MK Holdings, Inc.*, 734 F. App'x 950, 958 (6th Cir. 2018).

Whatever interrogatory answers or request for production responses Plaintiff provided on February 20, 2026 (*i.e.*, 120 days after they were served) and whatever testimony she provided on March 4, 2026 (*i.e.*, 27 days after the originally noticed deposition), there were two intervening motions to compel – one filed on

December 31, 2025 (ECF No. 53) and another filed on February 10, 2026 (ECF No. 82). The Court's February 11, 2026 order addressed Defendant's initial motion to compel over the course of 3.5 pages (*see* ECF No. 84, PageID.836-840), and, when addressing Plaintiff's January 5, 2026 emergency motion to stay (ECF No. 54), the order stated:

> Additionally, while Plaintiff argues that she will suffer "irreparable harm" by having to subject herself to the scope of discovery this Court determined to be appropriate based on the pleadings, *Defendant is being prejudiced by the ongoing inability to obtain any discovery, as exemplified by its two pending motions to compel and/or for case ending sanctions*. (ECF Nos. 53, 82.)

(ECF No. 84, PageID.835 (emphasis added).)

Yet, in its April 8, 2026 filing, Defendant represents it is still without "full and complete responses to its initial discovery requests served many months ago." (ECF No. 107, PageID.1339; ECF No. 97, PageID.967.) Additionally, as discussed above, Plaintiff's March 4, 2026 deposition testimony did not remedy the deficiencies in her discovery answers and responses, at least with respect to damages. The Court agrees that "Plaintiff's efforts to find new employment (i.e., mitigate)" and "the basis for her damages" are among "essential topics related to the Complaint allegations for which Defendant is entitled to receive answers." (ECF No. 107, PageID.1339.) As a result, at least with respect to damages, Defendant has been stymied in its ability "to develop and prepare its defenses for

trial and dispositive motions." (ECF No. 97, PageID.967; ECF No. 82, PageID.807.)

This factor is met.

### 3. Whether the dismissed party was warned that failure to cooperate could lead to dismissal?

Plaintiff contends the Court's "prior warnings were vague and unaccommodated." (ECF No. 106, PageID.1265-1267.) However, at least three of the Court's orders discredit Plaintiff's argument. First, the Court's August 13, 2025 order contains a clearly marked section providing "ADDITIONAL INFORMATION FOR PRO SE LITIGANTS," which includes information about the Federal Pro Se Legal Assistance Clinic and the following warning: "You are required to follow the Federal Rules of Civil Procedure and the Eastern District of Michigan Local Rules throughout the litigation process." (ECF No. 18, PageID.220-221.)

Second, the Court's November 5, 2025 order, within its discussion of the scope of discovery, stated that "Plaintiff can anticipate related discovery into . . . both her physical and mental health[,]" providing two citations to support this statement. (ECF No. 38, PageID.428-429.)[15] The Court's order also memorialized

---

[15] *See Maday v. Public Libraries of Saginaw*, 480 F.3d 815, 821 (6th Cir. 2007) and *Kubik v. Central Mich. Univ. Bd. of Trustees*, No. 15-cv-12055, 2016 WL 9631633, at *4-5 (E.D. Mich. Mar. 17, 2016) (Morris, M.J.).

the October 23, 2025 docket entry, including the limitation of Defendant's request for medical and mental health records "to 10 years back from the present." (*Id*., PageID.429.)

Third, on February 11, 2026, when addressing Defendant's December 31, 2025 motion to compel (*see* ECF No. 53), the Court ordered Plaintiff to "fully answer" Defendant's interrogatories and requests for production "without objection" and to "attend and give her deposition," further providing:

> **Plaintiff is HEREBY WARNED that failure to comply with this order may result in an award of costs and expenses against her, as well as sanctions under Fed. R. Civ. P. 37, up to and including dismissal of her case with prejudice.**

(ECF No. 84, PageID.839-840 (emphases in original).) (*See also* ECF No. 82, PageID.808-809; ECF No. 97, PageID.968-969; ECF No. 107, PageID.1339-1340.)

This factor is met.

**4. Whether less drastic sanctions were imposed or considered before dismissal was ordered?**

Plaintiff argues that the Court "has failed to apply lesser sanctions." (ECF No. 106, PageID.1267-1269.) Among other things, Plaintiff contends "Defendant is seeking a windfall dismissal for a dispute that is easily solved by a Standard Protective Order." (*Id*., PageID.1267.) However, as noted above, Plaintiff sought a preliminary protective order due to privacy concerns in October 2025 (ECF Nos.

26, 34), which the Court addressed in November 2025 (*see* ECF No. 38), and Plaintiff again sought such relief in February 2026 (ECF No. 91), which the Court addressed on March 4, 2026 (*see* ECF No. 99). And, as explained *supra*, Defendant's November 2025 effort to enter into a standard, stipulated protective order was met with unreasonable demands.

As for Defendant's March 2, 2026 concerns about mitigation information (*see* ECF No. 97, PageID.965-967), Plaintiff contends she "has already provided all substantive mitigation information via sworn testimony[,]" (ECF No. 106, PageID.1268), which is presumably a reference to her March 4, 2026 deposition testimony. To be sure, as noted above, the deposition transcript reflects testimony regarding RNA and Forefront, places Plaintiff worked after her employment with Defendant. (*See* ECF No. 105, PageID.1047-1048 [pp. 25-30], 1070 [p. 116].) However, at the March 11, 2026 hearing, defense counsel represented that Defendant still needed information regarding mitigation of damages, and it is clear that it does.

True, "[d]ismissal is the sanction of last resort." *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994). Still, with respect to the fourth factor, in a case where "the district court did not impose lesser sanctions on the plaintiffs before dismissing the case[,]" the Sixth Circuit has recently stated:

> . . . this court has "never held that a district court is without power to dismiss a complaint, as the first and only sanction." [*Harmon v. CSX*

> *Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997)]. And the record reflects that the district court considered less drastic sanctions but concluded that dismissal was the only sanction that would "protect the integrity of the judicial process given [the p]laintiffs' conduct."

*Kelmendi v. Hogan*, No. 24-1884, 2025 WL 2901498, at *4 (6th Cir. Oct. 7, 2025). *See also Parsons v. Paige*, No. 24-10247, 2025 WL 3544646, at *3 (E.D. Mich. Nov. 10, 2025) (Ivy, M.J.) ("Finally, the Court has considered imposing less drastic sanctions, but considering Defendant Paige's complete failure to respond to this Court's orders as directed, a less drastic sanction is unavailable."), *report and recommendation adopted*, No. 24-10247, 2025 WL 3543615 (E.D. Mich. Dec. 10, 2025) (Levy, J.).

Here, after considering the possible imposition of lesser sanctions, I nonetheless agree with Defendant: "Plaintiff's actions demonstrate that a lesser sanction will not be effective in deterring [her] behavior." (ECF No. 82, PageID.810.) Even setting aside the issue of mitigation information and focusing on Plaintiff's pleading's alleged "emotional distress" related damages – including, *inter alia*, anxiety, as well as "health deterioration exacerbated by prescription access interference" (ECF No. 1, PageID.17) – which she does not withdraw (ECF No. 105, PageID.1068 [pp. 107-108]), her continued resistance to providing information about her physical and mental health "has effectively placed this litigation at a standstill . . . ." (ECF No. 97, PageID.969.) (*See also* ECF No. 107, PageID.1340-1342.) But more importantly, her consistent refusal to abide by this

Court's rulings cannot be tolerated or rewarded. Nor should the Court send the message to other would-be litigants that its orders are optional. Plaintiff may not be her own judge and jury.

### H. Conclusion

While Plaintiff considers dismissal a "'death penalty' sanction that is grossly disproportionate . . . [,]" the above history is not – as Plaintiff phrases it – "a good-faith dispute over a single, privileged category of data." (ECF No. 106, PageID.1256.) Instead, Plaintiff wishes to litigate on her own terms. Notwithstanding the Court's multiple orders regarding the scope of discovery (*see* Section II.B), Plaintiff's February 20, 2026 discovery answers and responses were not "full" and "without objection" (*see* Section II.C), Plaintiff's March 4, 2026 deposition testimony did not remedy the deficiencies in her discovery answers and responses, at least with respect to damages (*see* Section II.D), and dismissal of this action is warranted under Fed. R. Civ. P. 37(b)(2)(A)(v) (*see* Section II.G).

Accordingly, the Court should **GRANT** Defendant's motion to compel Plaintiff's deposition (ECF No. 82), as supplemented by the deposition transcript (ECF No. 105), **GRANT** Defendant's motion to dismiss pursuant to Fed. R .Civ. P. 37(b)(2) (ECF No. 97), and **DENY** Defendant's requests for attorney fees (*see* ECF No. 82, PageID.789-790, 811-812; ECF No. 97, PageID.949, 970) **WITHOUT PREJUDICE** to filing a motion for attorney fees (*see* Fed. R. Civ. P.

54(d)(2), E.D. Mich. LR 54.1.2) should the Court enter judgment in Defendant's favor. Of course, if the Court disagrees with this recommendation, then it might consider any of the other sanctions permitted by Fed. R. Civ. P. 37(b)(2). (*See also* ECF No. 82, PageID.810-811.)

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: April 14, 2026

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE